**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: December 31 2012

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 12-30898 |
| | ) | |
| Robert W. DeBouver and | ) | Chapter 13 |
| Kimberly D. DeBouver, | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION REGARDING OBJECTION TO CLAIM

This case is before the court on Debtors' objection ("Objection") [Doc. # 19] to a proof of claim in the total amount of $3,327.36 filed by creditor Jim Bame Landscaping & Firewood LLC ("Creditor") and Creditor's response [Doc. #32]. The court held an evidentiary hearing that the parties and their counsel attended in person.

The district court has jurisdiction over this Chapter 13 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings involving allowance or disallowance of claims are core proceedings that the court may hear and determine under 28 U.S.C. § 157(b)(1) and (b)(2)(B). For the reasons that follow, Debtors' Objection will be sustained, and Creditor's claim will be allowed in the reduced amount of $1,026.35.

# FACTS

On April 12, 2011, the parties entered into two separate contracts. One contract required Creditor to tear out and remove several bush and tree stumps and to perform various landscaping services at Debtors' residence for a total amount of $2,760.00 ("Landscaping Contract"). [Debtor Ex. A]. The second contract required Creditor to remove an existing concrete porch and sidewalk at Debtors' residence and install an approximately eight foot by twenty foot patio consisting of wall block and pavers over a six to eight inch stone base ("Porch Contract"). [Creditor Ex. 1]. After signing the contracts but before Creditor began any of the work, Robert DeBouver sustained an injury that caused him to be off work for an extended time. When Creditor's principal, Jim Bame ("Bame"), arrived at Debtors' residence to begin work on the Landscaping Contract in May 2011, Kimberly Debouver told him that their payments on the contracts may be slow as a result of her husband's injury and was assured by him that he would, and according to Ms. Debouver, he did, "work with her" on payments.

Regarding the Landscaping Contract, Robert DeBouver testified that Bame "did everything he said he would do" except that the grading of the lawn was insufficient and, to that end, offered numerous photographs showing weeds and bare spots in the lawn. [*See* Debtor Exs. C - M]. However, the court credits Kimberly Debouver's testimony that Creditor did "a great job" but that a hail storm had occurred a few days after the landscaping had been completed that contributed to the condition of the lawn. In addition, the photographs were taken in the midst of a severe drought a year and a half after Creditor completed the landscaping work. Thus, the court gives the photographs little or no weight.

Debtors made several payments on the Landscaping Contract. However, as of October 31, 2011, they still owed a balance of $1,026.35. On that date, Kimberly DeBouver sent a check in that amount to Jim Bame with a notation on the check, "Paid in full." [Debtor's Ex. W]. She testified that a few days later she received a letter stating that Bame took the check to his attorney. The court credits this testimony and her testimony that there were sufficient funds in the checking account for "several weeks" after the check was written. Although Bame's wife, Carrie Bame, testified that she called Debtors' bank two times and both times was told that there were insufficient funds in the account to cover the check, the record is silent as to when those calls were made. In any event, Debtors agree that they still owe Creditor a balance of $1,026.35 on the Landscaping Contract.

With respect to the Porch Contract, at the time the contract was signed, Bame purchased the wall block and pavers that would be needed for installing the patio so that they would match the retaining wall

that he would install pursuant to the Landscaping Contract. At the time the contracts were signed, the parties intended that performance under the Porch Contract would follow completion of the Landscaping Contract. However, the Landscaping Contract required Creditor to remove certain tree roots that went under the porch and sidewalk, and their removal broke up parts of the sidewalk. For this reason and to avoid damage to the landscaping if done at a later date, Creditor performed that part of the Porch Contract that required tear out of the porch and sidewalk and installation of the stone base in conjunction with performance of the Landscaping Contract.

The Porch Contract required Creditor to install a patio measuring approximately eight feet by twenty feet on a six to eight inch stone base. However, Robert DeBouver testified, and Creditor did not dispute, that the width of the stone base that Creditor actually installed, however, measures twelve rather than eight feet and the depth of the stone measures only five inches. [*See* Debtor Ex. R]. According to Bame, he intentionally made the area wider because the stone "must be a foot wider" than the patio area to provide a stable base for the retaining wall. He testified that "if you make a ten foot wide porch, you make it eleven or twelve feet of stone."

Although he was not present when the stone was delivered, based on calculations using a formula he found on the internet, Robert DeBouver testified that he believed Creditor installed only four tons of stone. The court, however, credits Carrie Bame's testimony that twenty tons of stone were delivered and installed as a base for the patio. Carrie Bame not only handles Creditor's finances but also works at the job sites and was present when the stone was delivered. She testified that four truck loads were delivered and that each truck holds five tons of stone. The court credits her testimony as to the capacity of the trucks used by Creditor given her nearly thirty years of experience in the business.

There is no dispute that Creditor never installed the wall block and pavers to complete installation of the patio and, thus, that Creditor never completed the Porch Contract. And although Creditor purchased the wall block and pavers at the time the contract was signed, they were never delivered to the job site and still remain in Creditor's possession. Robert DeBouver testified that because of the medical bills that he had incurred, he told Bame to wait on the remaining work under that contract and that he thought it could be done "later in 2011 or 2012." There is also no dispute that no payments on the Porch Contract have been made by Debtors.

Carrie Bame credibly testified that the total costs incurred by Creditor in connection with the Porch Contract include the following:

```
20 tons of stone:                            $250.00
Hauling of stone (4 trucks @ $30.00 each)     120.00
```

3

|  |  |
|---|---|
| Hauling of sidewalk | 270.00 |
| Employee - labor cost | 255.86 |
| Temporary labor cost | 122.19 |
| Jim Bame labor - (8 hrs. x $35.00/hr.) | 280.00 |
| Carrie Bame labor - (8 hrs. x $35.00/hr.) | 280.00 |
| Pavers | 326.40 |
| Wall block | 241.56 |
| Pallet charge | 30.00 |
| Total | $2,176.61 |

[*See* Cr. Exs. 2-5].

Other than the stone tonnage, the only expense set forth above disputed by Debtors is the labor cost of Carrie Bame. According to Kimberly DeBouver, Carrie Bame was only at the job site one day. That fact, however, is not inconsistent with the cost for eight hours of work attributed to Carrie Bame above.

Creditor filed a timely proof of claim in the amount of $3,327.26.

## LAW AND ANALYSIS

A properly executed and filed proof of claim constitutes "*prima facie* evidence of the validity and amount of the claim." Fed. R. Bankr. Rule 3001(f). When an objection is filed, the objecting party bears the initial burden of producing sufficient evidence to rebut the presumption of validity given to the claim. *In re Leatherland Corp.,* 302 B.R. 250, 259 (Bankr. N.D. Ohio 2003). The burden then shifts to the claimant to prove the validity and amount of the claim by a preponderance of the evidence. *Id.* While the burden of going forward shifts during the claims objection process, the ultimate burden of persuasion is always on the claimant to prove the claimed entitlement. *Id.* (citing *In re Holm,* 931 F.2d 620, 623 (9th Cir.1991)).

In this case, Creditor's proof of claim in the total amount of $3,327.26 consists of the $1,026.35 balance owed by Debtors on the Landscaping Contract plus $2,300.91 that Creditor asserts is owed with respect to the Porch Contract. As Debtors do not dispute that they owe the Landscaping Contract balance of $1,026.35, only amounts relating to the Porch Contract are at issue. Debtors offered testimony and evidence that Creditor did not install the patio wall block and pavers and, thus, did not complete the Porch Contract, and that Creditor did not deliver twenty tons of stone as claimed in its cost analysis or install the stone base within the contract specifications. This testimony and evidence is sufficient to overcome the presumption of the validity and amount of that portion of Creditor's claim relating to the Porch Contract. Consequently, the burden of going forward shifted back to Creditor to prove the validity and amount of its claim. *Id.* (citing *In re Lenz*, 110 B.R. 523, 525 (D. Colo. 1990)).

Creditor's claim with respect to the Porch Contract consists of the expenses incurred by it in partially

4

performing under the contract. Creditor characterized its claim as one for quantum meruit. Generally, where the subject matter of the claim is governed by contract, as it is here, the equitable doctrine of quantum meruit is inapplicable. *Westbrook v. Swiatek*, No. 09CAE09-0083, 2011 WL 607243, *13, 2011 Ohio App. LEXIS 665, *31 (Ohio App. Feb. 14, 2011) (citing *Ullman v. May*, 147 Ohio St. 468, 477-78 (1947)); *Teknol, Inc. v. Buechel*, No. C-3-98-416, 1999 WL 33117391, *2, 1999 U.S. Dist. LEXIS 22017, *5-6 (S.D. Ohio Aug. 9, 1999) ("It is well-established that Ohio law does not permit recovery under the theory of unjust enrichment when an express contract covers the same subject."). An exception to this rule exists where a defaulting contractor has contributed substantial value to the other party's property. *Murray v. Marbro Builders, Inc.*, 53 Ohio App. 2d 1, 3-4 (1977) (citing *Kirkland v. Archbold*, 68 Ohio Law Abs. 481, 485-86 (Ohio App. 1953). In such cases, in order to avoid the harsh result of forfeiture, Ohio courts recognize an action in quasi-contract whereby the defaulting creditor may recover the reasonable value of the benefits conferred on the other contracting party by its partial performance less any damages for his own breach of contract. *Id.; Auto-Owners Ins. Co. v. Wheatley*, No. 2004-T-0043, 2005 WL 2133704, *3, 2005 Ohio App. LEXIS 4188, *7-10 (Ohio App. 11th Dist. Sept. 2, 2005) (citing cases); *see Lamberjack v. Gyde*, No. 92-OT-034, 1993 WL 476313, *5, 1993 Ohio App. LEXIS 5528, *13-14 (Ohio App. 6th Dist. Nov. 19, 1993).

Although characterizing its claim as one for quantum meruit, Creditor asserts that Debtors are the defaulting parties and that it was excused from further performance of the Porch Contract due to Debtors' failure to make the final payment on the Landscaping Contract and Debtors' direction to wait until an unspecified time in the future to complete the Porch Contract. When a contract is materially breached, the non-breaching party may recover either damages for his expectancy interest or restitution, that is, "the benefits he has conferred upon the breaching party by his performance under the contract." *Yurchak v. Jack Boiman Constr. Co.*, 3 Ohio App. 3d 15, 16 (1981) (stating that "the right to restitution from a party who has substantially failed to perform his part of the bargain is firmly established"). "The term 'restitution,' as it applies in breach of contract cases, refers only to the remedy of placing [the party] in the position where he was before the contract was made. . . ." *Id.* n.1. However, such recovery is only available to a non-breaching party. *Cf. Sites v. Moore*, 79 Ohio App.3d 694, 701 (1992) (stating that a breaching party is not entitled to collect contract damages); *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 108 (1995) (setting forth the elements of a breach of contract claim, which include that the non-breaching party performed its contractual obligations).

Thus, in order for Creditor to prove a valid claim for work performed and materials supplied in

5

connection with the Porch Contract, it was incumbent upon it to show either that it did not materially breach the contract such that it is entitled to restitution, *see Software Clearing House, Inc. v. Intrak, Inc.*, 66 Ohio App. 3d 163, 170 (1990) (explaining that only a material breach of contract discharges the obligation of the other party to the contract), or, to the extent it did breach the contract, that its partial performance has contributed substantial value to Debtors' property such that it is entitled to recovery under a theory of quantum meruit.

As for recovery as a result of Debtors' breach of contract under a theory of restitution, Creditor did not meet its burden of showing that it performed its contractual obligations under the Porch Contract and that it did not materially breach the Porch Contract. Creditor's failure to complete the Porch Contract was at Debtors' direction due to the medical expenses incurred as a result of Robert DeBouver's injury/illness and does not constitute a breach by Creditor. However, it is undisputed that Creditor did not install the stone base for the patio in accordance with the contract. It installed a twelve-foot rather than eight-foot wide base at a depth of only five inches rather than the six to eight inches required by the contract. While it is at least arguable that installing the base at a width of twelve feet is not a material breach since it provides Debtors with more rather than less, Creditor did not address the materiality of its failure to install the base at the proper depth. Factors considered in determining the materiality of a breach include the extent to which the injured party will be deprived of the expected benefit. *Kersh v. Montgomery Developmental Ctr.*, 35 Ohio App. 3d 61, 62 (1987). The record is silent as to whether a five-inch base is sufficient to permit installation of the patio contemplated by the Porch Contract. To the extent it is not, Creditor's failure to install the base with a proper depth is a material breach that excuses Debtors' performance under the contract and precludes Creditor from recovery under a theory of restitution.

Likewise, the record is silent as to whether Creditor's partial performance of the Porch Contract has contributed substantial value to Debtors' property or has conferred any benefit at all on Debtors. It was incumbent upon Creditor to show that the five-inch stone base that was installed by it could be utilized in some fashion by Debtors. For example, evidence that the five-inch base is sufficient for installation of the contemplated patio or even that Debtors would only have to add one inch of stone on top of the stone base that was installed, which, however, would appear to be above ground level, could support a finding that Creditor's partial performance contributed value to Debtors' property. However, the court cannot simply assume such facts and they are not in evidence.

Having failed to show that its breach relating to installation of the stone base was not a material breach, and having failed to show that its partial performance contributed substantial value to Debtors'

6

property, Creditor has failed to demonstrate the validity of its claim with respect to the Porch Contract under either a restitution or a quantum meruit theory of recovery. The court will, therefore, sustain Debtors' objection to Creditor's claim and will allow the claim only to the extent of the $1,026.35 owed under the Landscaping Contract.

The court will enter a separate order in accordance with this Memorandum of Decision.

###